UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

CHRISTOPHER WILLIAMS,        )    No. ED CV 08-549-PLA
                              )
                Plaintiff,    )
                              )
          v.             )    **MEMORANDUM OPINION AND ORDER**
                              )
MICHAEL J. ASTRUE,          )
COMMISSIONER OF SOCIAL    )
SECURITY ADMINISTRATION,   )
                              )
                Defendant.   )
_____)

**I.**

**PROCEEDINGS**

       Plaintiff filed this action on April 28, 2008, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on May 7, 2008, and June 18, 2008.  Pursuant to the Court's order, the parties filed a Joint Stipulation on April 20, 2009, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on October 16, 1947. [Administrative Record ("AR") at 107, 313.] He has completed high school and three years of college, but has no past relevant work experience. [AR at 16, 119, 427.]

Plaintiff received Supplemental Security Income ("SSI") payments from April 1, 1981, until May 1, 2000, for his psychiatric disability, schizophrenia. [AR at 66.] The Administration determined that plaintiff's condition had improved as of May 1, 2000, and as a result, plaintiff's SSI payments ceased. [AR at 66.] Plaintiff appealed the decision, and a hearing was held before an Administrative Law Judge ("ALJ") on October 5, 2001, at which plaintiff testified on his own behalf. A vocational expert and plaintiff's mother also testified. [AR at 66.] On October 26, 2001, the ALJ issued a decision affirming the cessation of plaintiff's benefits. [AR at 62-70.]

On May 23, 2002, plaintiff filed a new application for SSI payments in which he alleged that he has been unable to work since 1970 due to, among other things, schizophrenia and back, knee, foot, and shoulder pain.[1] [AR at 107-09, 112-21.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an ALJ. [AR at 74-84.] A hearing was held on October 6, 2003, at which plaintiff appeared with counsel and testified on his own behalf. A medical expert also testified. [AR at 20-51.] A supplemental hearing was held on May 25, 2004, at which plaintiff appeared with counsel and a vocational expert testified. [AR at 52-61.] On August 25, 2004, the ALJ issued an unfavorable decision. [AR at 9-17.] The Appeals Council denied plaintiff's request for review of the hearing decision on April 27, 2005. [AR at 4-7.] Plaintiff then filed an action in District Court, Case No. ED CV 05-461-PLA, challenging the Commissioner's decision. On July 18, 2006, this Court remanded the matter for further proceedings, and ordered the ALJ to reconsider, among other things, the opinion of plaintiff's treating psychiatrists, Dr. W. Lawrence and Dr. Guia Montenegro. [AR at 443-55.]

---

[1]   At the hearing, the alleged onset date was amended to May 23, 2002. [AR at 42.]

1  On December 14, 2006, the Appeals Council issued an order remanding the case for

2  further proceedings.[2]  [AR at 440-42.]  A hearing was held on October 5, 2007, at which plaintiff

3  appeared with counsel and testified on his own behalf.  A medical expert and a vocational expert

4  also testified.  [AR at 666-88.]  On February 11, 2008, the ALJ issued an unfavorable decision,

5  again finding plaintiff not disabled.  [AR at 413-28.]  This action followed.

6

7  **III.**

8  **STANDARD OF REVIEW**

9  Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's

10  decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial

11  evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater,

12  60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

13  In this context, the term "substantial evidence" means "more than a mere scintilla but less

14  than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

15  adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

16  1257.  When determining whether substantial evidence exists to support the Commissioner's

17  decision, the Court examines the administrative record as a whole, considering adverse as well

18  as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

19  Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

20  must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

21  53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

22  /

23  /

24  /

25

26  [2]  The Appeals Council noted that plaintiff had filed a subsequent application for SSI payments on September 7, 2004.  [AR at 442; see AR at 478-90.]  The Appeals Council deemed

27  plaintiff's September 2004 application to be a duplicate of his pending application (dated May 2002), and ordered the ALJ to "associate the claim files and issue a new decision on the

28  associated claims."  [AR at 442.]

# IV.

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the

1  sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d
2  at 1257.

3

4  **B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

5           In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial
6  gainful activity since May 23, 2002, the filing date of his application.  [AR at 417, 427.]  At step two,
7  the ALJ concluded that plaintiff has the following severe impairments: "status post right knee
8  surgery and minimal lumbar degenerative disc disease."  [AR at 417-22, 427.]  At step three, the
9  ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the
10 Listing.  [AR at 422.]  The ALJ further found that plaintiff retained the residual functional capacity
11 ("RFC")[3] "to perform the full range of work at the medium exertional level."[4]  [AR at 422-27.]  At
12 step four, the ALJ noted that plaintiff had worked as a cleaner in 1997-1998, and that the
13 vocational expert testified that the work of a cleaner is unskilled and medium exertional-level work.
14 [AR at 427.]  However, the ALJ concluded that because plaintiff did not perform his work as a
15 cleaner at a substantial gainful activity level, "it cannot be considered to be his past relevant work."
16 [<u>Id.</u>]  At step five, using Medical-Vocational Rules 203.06 and 203.14 of the Regulations and the
17 vocational expert's testimony that plaintiff could perform his past job as a cleaner, the ALJ
18 concluded that plaintiff "is capable [of] making an adjustment to other work."  [<u>Id.</u>]  Accordingly, the
19 ALJ that found plaintiff is not disabled.  [<u>Id.</u>]
20 /
21 /
22 /
23 /
24

25        [3]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.
26 <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

27        [4]    Medium work is defined as work involving "lifting no more than 50 pounds at a time with
   frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c),
28 416.967(c).

# V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to properly: (1) consider the findings of Dr. W. Lawrence, one of plaintiff's treating psychiatrists; (2) consider the findings of Dr. M. Jay Porcelli, plaintiff's treating physician; (3) develop the record; (4) pose a complete hypothetical question to the vocational expert; (5) consider the mental and physical demands of plaintiff's past work as a cleaner; and (6) consider plaintiff's testimony.  [Joint Stipulation ("JS") at 3.]  As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

## A.   DR. LAWRENCE'S FINDINGS

Plaintiff maintains that he is unable to work due to mental and physical impairments, including schizophrenia; mental problems; arthritis; and back, knee, feet and shoulder pain.  [AR at 113, 482, 673.]  Plaintiff asserts that the ALJ did not adequately consider Dr. Lawrence's findings concerning plaintiff's psychiatric disorder in accordance with this Court's Order in Case No. ED CV 05-461-PLA.  [JS at 3-5.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830.  Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician.  However, the ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence, if the ALJ provides explicit and legitimate reasons for discounting the opinion.  See Lester, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and

1  legitimate reasons that are supported by substantial evidence in the record); see also Orn, 495

2  F.3d at 632 ("[e]ven when contradicted by an opinion of an examining physician that constitutes

3  substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations

4  omitted); Social Security Ruling 96-2p[5] (a finding that a treating physician's opinion is not entitled

5  to controlling weight does not mean that the opinion is rejected).

6      Dr. Lawrence treated plaintiff from October 2, 2000, to April 23, 2001.  [AR 184-92.]  On

7  October 2, 2000, Dr. Lawrence diagnosed plaintiff with of schizoaffective disorder and opined that

8  plaintiff had a Global Assessment of Functioning ("GAF") score of 45.[6]  [AR at 184.]  In a Client

9  Plan report completed on that day, Dr. Lawrence noted that plaintiff displayed "disorganized

10 thinking, alcohol use, hallucinations, depression."  [AR at 345.]  Dr. Lawrence also concluded that

11 plaintiff's dysfunctional level was "severe" and predicted a "probability of a significant deterioration

12 in an important area of life functioning," if clinically planned interventions were not instituted.  [AR

13 at 345-46.]  Additionally, Dr. Lawrence's treatment notes reflect his opinion that plaintiff is

14 "tangential if left alone," "disorganized," and "refers to religious and other delusions (hearing Elvis

15 Presley) but will not answer my questions about these."  [AR at 338.]

16     In reversing and remanding the ALJ's August 2004 decision finding plaintiff not disabled,

17 this Court noted that the ALJ's opinion "wholly fail[ed] to mention Dr. Lawrence," even though Dr.

18 Lawrence's opinion is entitled to "special weight" as the opinion of a treating physician.  [AR at

19 451, citing AR at 12-17.]  The Court noted that the ALJ's failure to even *mention* Dr. Lawrence's

20 findings constituted an implicit -- and therefore improper -- rejection of Dr. Lawrence's medical

21

22     [5]   Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute
23 Social Security Administration interpretations of the statute it administers and of its own
   regulations," and are given deference "unless they are plainly erroneous or inconsistent with the
24 Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

25     [6]   A Global Assessment of Functioning score is the clinician's judgment of the individual's
26 overall level of functioning.  It is rated with respect only to psychological, social, and occupational
   functioning, without regard to impairments in functioning due to physical or environmental
27 limitations.  Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th Ed.
   2000).  A GAF score in the range of 41-50 indicates serious symptoms or any serious impairment
28 in social, occupational, or school functioning (e.g., unable to keep a job).  DSM-IV at 34.

7

1    opinion.  [AR at 452-53] quoting Parks v. Sullivan, 766 F.Supp. 627, 634 (N.D. III. 1991) ("[A]n

2    ALJ's finding cannot be said to be supported by substantial evidence when important medical

3    evidence is virtually ignored without explanation.").

4          In the February 2008 decision, the ALJ concluded that the medical evidence indicates that

5    plaintiff's mental health problems were at least "moderately severe" from late 2000 to February

6    of 2002.  [AR at 418.]  The ALJ discussed some of plaintiff's treatment records from that time

7    period and noted that plaintiff underwent a psychiatric evaluation conducted by Dr. Lawrence, and

8    that Dr. Lawrence stopped treating plaintiff in April 2001.  [Id.]  The ALJ then concluded that

9    plaintiff's medical records "[s]ince at least March of 2002," indicate that "the severity of his

10   symptoms and limitations has improved significantly."  [Id.]

11         Plaintiff contends that the ALJ's brief "mention of Dr. Lawrence's records ... fail[s] to comply

12   with the [Court's] remand order that required proper consideration of Dr. Lawrence's opinion." [JS

13   at 4.]  The Court disagrees.  Although the ALJ did not discuss Dr. Lawrence's findings in detail,

14   the ALJ effectively credited Dr. Lawrence's opinion.  Specifically, the Court infers from the ALJ's

15   conclusion that plaintiff's mental impairments were at least moderately severe from late 2000 to

16   February 2002 -- a time frame that fully encompasses the period in which Dr. Lawrence treated

17   plaintiff -- that the ALJ in fact credited Dr. Lawrence's opinion concerning plaintiff's impairments

18   and limitations, e.g., that plaintiff had a "severe" level of mental dysfunction.  See Magallanes v.

19   Bowen, 881 F.2d 747, 755 (9th Cir.1989) (the ALJ need not recite "magic words" when considering

20   a treating physician's findings and the reviewing court may draw "specific and legitimate inferences

21   from the ALJ's opinion").  The ALJ simply found that plaintiff's condition improved after he

22   concluded his treatment with Dr. Lawrence.  As the ALJ credited Dr. Lawrence's findings, remand

23   is not warranted on this issue.

24

25   **B.    DR. PORCELLI'S FINDINGS**

26         Plaintiff asserts that the ALJ improperly considered and rejected the medical opinion of Dr.

27   Porcelli, plaintiff's treating physician.  [JS at 15-19.]  Specifically, plaintiff contends that Dr.

28   Porcelli's findings establish that plaintiff "suffers from mental and physical impairments that ...

8

1 | significant[ly] impact ... [his] ability to work," and that "the ALJ failed to provide specific and
2 | legitimate reasons for rejecting Dr. Porcelli's opinion." [JS at 18-19.] Plaintiff also asserts that to
3 | the extent the ALJ found Dr. Porcelli's findings unclear, he erred in failing to further develop the
4 | record. [JS at 17-18, 22-23.]

5 |      According to the record, Dr. Porcelli has treated plaintiff since 2000. [AR at 115, 624-65.]
6 | Dr. Porcelli's handwritten treatment notes[7] indicate that he treated plaintiff for, among other
7 | medical conditions, orthopedic pain in his neck, back, shoulders, knees, and elbows [AR at 624-
8 | 27, 629-37, 640, 646, 650, 652]; arthritis [AR at 643]; headaches [AR at 635-36, 640, 652, 665];
9 | chest pain [AR at 636]; depression [AR at 632, 639, 643, 655]; and schizophrenia. [AR at 657.]
10 | In two San Bernardino County Transitional Assistance Department Medical Report forms, dated
11 | May 13, 2002, and October 1, 2004, Dr. Porcelli opined that plaintiff is permanently disabled, and
12 | that it was unnecessary for him to conduct additional tests or examinations in order to properly
13 | determine the permanence or degree of plaintiff's incapacity. [AR at 176, 562.] In the May 13,
14 | 2002, form, Dr. Porcelli diagnosed plaintiff as having depression and schizophrenia and explained
15 | that plaintiff was unable to work due to mental and physical limitations. [AR at 176.] In the
16 | October 1, 2004, form, Dr. Porcelli diagnosed plaintiff as having depression, "SCUT," and C4-C7
17 | disc disease, and indicated that plaintiff has been permanently disabled since 1997. [AR at 562.]

18 |      In the decision, the ALJ rejected Dr. Porcelli's findings represented in the October 2004
19 | Medical Report form because: (1) his opinion regarding plaintiff's disability status is a finding
20 | reserved to the Commissioner; (2) his opinion was vague and conclusory; (3) there is no objective
21 | evidence to support his opinion that plaintiff's spinal condition prevents plaintiff from working; (4)
22 | Dr. Porcelli would have recommended additional testing or treatment if plaintiff's condition were
23 | disabling; (5) he never referred plaintiff to see a specialist; (6) he "is not a mental health
24 | practitioner and has never treated [plaintiff] for his mental impairment at all;" and (7) it was unclear

25 |

26 |     [7] The information concerning Dr. Porcelli's medical opinions and findings discussed herein
27 | reflect what the Court could glean from Dr. Porcelli's treatment records. However, the Court
notes, as did the ALJ in his February 11, 2008, decision [see AR at 423, 426], that much of Dr.
28 | Porcelli's handwritten notes are difficult to read or illegible.

1    what he meant by the term "SCUT."[8]  [AR at 426.]  The Court has considered the ALJ's reasons

2    for rejecting Dr. Porcelli's opinion and concludes that they are insufficient.

3         An ALJ may properly reject a treating physician's opinion that is conclusory and

4    unsupported by medical findings.  See Batson v. Commissioner of the Social Security

5    Administration, 359 F.3d 1190, 1195 (9th Cir. 2004).  In this case, however, when the October

6    2004 form is considered along with all of Dr. Porcelli's treatment notes, rather than in isolation, it

7    appears that Dr. Porcelli's opinion concerning plaintiff's impairments and limitations was not

8    conclusory or vague, but instead consistent with his years of treatment and diagnostic medical

9    records.  [See AR at 624-65.]  Specifically, according to Dr. Porcelli's treatment notes, Dr. Porcelli

10   has treated plaintiff for, among other medical conditions, schizophrenia, depression and persistent

11   back pain.  [AR at 624-27, 629-37, 639-40, 643, 646, 656-57, 657.]  The medical record also

12   shows that in 2002 Dr. Porcelli opined that due to his mental and physical conditions, plaintiff is

13   too disabled to work.  [AR at 176.]  In rejecting Dr. Porcelli's October 2004 opinion as conclusory

14   and vague, the ALJ thus failed to consider Dr. Porcelli's years of treatment and diagnostic notes

15   that corroborate his opinion.  The ALJ may not consider only those portions of the record that favor

16   his ultimate conclusion.  See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is

17   not permitted to reach a conclusion "simply by isolating a specific quantum of supporting

18   evidence"); Reddick v. Chater, 157 F.3d 715, 72-23 (9th Cir. 1998) (it is impermissible for the ALJ

19   to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of

20   the testimony and reports") (citation omitted).  As such, because the ALJ failed to consider all of

21   Dr. Porcelli's treatment notes, which provide context for the October 2004 report, the ALJ's

22   rejection of Dr. Porcelli's opinion as vague and conclusory was improper.

23        Next, to the extent that the ALJ determined that Dr. Porcelli's October 2004 opinion was

24   inconsistent with the objective evidence, that was an inadequate reason to reject Dr. Porcelli's

25   findings as it fails to reach the level of specificity required for rejecting an opinion of a treating

26

27   ────────────────

28   [8]  Plaintiff asserts that "SCUT" is an acronym that stands for either "Schizophrenia, Chronic, Undifferentiated Type" or "subcutaneous."  [JS at 17.]

1   physician.  See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical

2   opinions are not supported by sufficient objective findings or are contrary to the preponderant

3   conclusions mandated by the objective findings does not achieve the level of specificity our prior

4   cases have required, even when the objective factors are listed seriatim.  The ALJ must do more

5   than offer his conclusions.  He must set forth his own interpretations and explain why they, rather

6   than the [treating] doctors', are correct.") (footnote omitted); see also McAllister v. Sullivan, 888

7   F.2d 599, 602 (9th Cir. 1989) (finding that rejecting the treating physician's opinion on the grounds

8   that it was contrary to clinical findings in the record was "broad and vague, failing to specify why

9   the ALJ felt the treating physician's opinion was flawed").  Furthermore, the record reflects that Dr.

10  Porcelli conducted a variety of objective medical tests, including X-rays, CT scans, and MRI scans,

11  which may have objectively verified his opinion concerning the disabling effects of plaintiff's

12  orthopedic conditions.  [See AR at 628, 643, 646, 648, 651, 652.]  The ALJ's failure to mention

13  that Dr. Porcelli conducted these tests reflects an improper selective consideration of the medical

14  evidence.  Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or

15  misstate the competent evidence in the record in order to justify his conclusion).[9]

16      Next, to the extent the ALJ concluded that Dr. Porcelli failed to pursue or recommend

17  additional medical testing or treatment, and never treated plaintiff's psychiatric conditions, these

18  conclusions are unsupported by the medical evidence and are inconsistent with other parts of the

19  ALJ's decision.  In a different part of the ALJ's decision, the ALJ acknowledged that "Dr. Porcelli

20  prescribed some medication and recommended an orthopedic evaluation."   [AR at 423.]

21  According to Dr. Porcelli's treatment notes, he did in fact conduct a variety of medical tests over

22

23  _____

24      [9]   It also appears that the ALJ selectively read Dr. Porcelli's records reflecting the extent of
    plaintiff's orthopedic problems.  For example, the ALJ concluded that according to Dr. Porcelli's
25  records, plaintiff did not consistently complain about back or knee pain until 2005 [AR at 423], and
    that the medical evidence fails to support plaintiff's "use of the cane [as] [t]he clinical findings fail
26  to show any weakness or instability in [plaintiff's] knee." [AR at 424.]  Dr. Porcelli's records in fact
    show that he has treated plaintiff's back and knee pain at least since 2003 [AR at 624-37, 640,
27  646, 649-51], that plaintiff specifically reported weakness in his knees [AR at 635], and that Dr.
    Porcelli prescribed knee braces and a cane as treatment for plaintiff's knee condition.  [AR at 635,
28  651.]

the years that he treated plaintiff, including X-rays, electrocardiograms, CT scans, and MRI scans. [See AR at 624, 628, 635, 643, 646, 648, 651, 652.]  The record also reflects that Dr. Porcelli treated plaintiff's orthopedic and psychiatric conditions by prescribing various pain and psychiatric medications,[10] various orthopedic braces, and a cane.  [AR at 118, 297, 635, 647-48, 651, 674-75.]  It is impermissible for the ALJ to "reach a conclusion first, and then attempt to justify it by" selectively rejecting and crediting "evidence in the record" at various parts of his decision.  Gallant, 753 F.2d at 1456.  The ALJ's selective consideration of the medical evidence and contradictory findings regarding Dr. Porcelli's treatment and testing of plaintiff's conditions renders his rejection of Dr. Porcelli's opinion improper.

The ALJ also erroneously disregarded Dr. Porcelli's October 2004 report to the extent he did so because Dr. Porcelli opined about plaintiff's disability status and because Dr. Porcelli "is not a mental health practitioner."  [AR at 426.]  Although 20 C.F.R. §§ 404.1527(e) and 416.927(e) state that a determination concerning whether a claimant is disabled is an administrative finding that is reserved to the Commissioner, ALJs are still obligated to "consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner."  SSR 96-5p; see 20 C.F.R. §§ 404.1527(e), 416.927(e).  Also, as plaintiff's treating physician, Dr. Porcelli was qualified to treat and offer opinions about plaintiff's psychiatric condition, even if he is not a mental health practitioner.  See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) ("an assumption that [psychiatric] evidence must be offered by a ... psychiatrist, [] is clearly erroneous.  There is no such requirement in the regulations."  A treating physician "is qualified to give a medical opinion as to ... [a claimant's] mental state ... even though [the physician] is not a psychiatrist.").

---

[10]   The ALJ also concluded that plaintiff was not receiving any mental health treatment at the time of the decision.  [AR at 418.]  That conclusion is not supported by the record.  At the hearing, plaintiff testified that he was taking, among other medications, two psychiatric medications -- Lamictal and Aricept -- prescribed by Dr. Porcelli.  [AR at 674-75.]  Lamictal is used to treat bipolar disorder.  See Physicians' Desk Reference, at 1522 (64th ed. 2010).  Aricept is used to treat dementia.  See id. at 1047.  As mentioned above, Dr. Porcelli's notes indicate that he treated plaintiff for depression and schizophrenia.  [AR at 632, 639, 643, 656-57.]

1  Finally, the ALJ's finding that Dr. Porcelli's treatment notes were unclear or illegible [AR at

2  423, 426] should have triggered his duty to clarify those ambiguities. See Tonapetyan v. Halter,

3  242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the

4  record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to

5  'conduct an appropriate inquiry.'") (quoting Smolen, 80 F.3d at 1288); see also Cutler v.

6  Weinberger, 516 F.2d 1282, 1285 (2nd Cir. 1975) ("Where the medical records are crucial to the

7  claimant's claim, illegibility of important evidentiary material has been held to warrant a remand

8  for further clarification and supplementation."). When medical records are inadequate to

9  determine whether a claimant is disabled, the ALJ must recontact the medical source, including

10  the treating physician if necessary, to clarify the ambiguity or to obtain additional information

11  pertaining to the claimant's medical condition. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).

12  The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the

13  claimant's burden. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001). The ALJ's duty

14  to fully develop the record is "heightened where[, as in this case,] the claimant may be mentally

15  ill and thus unable to protect [his] own interests." Tonapetyan, 242 F.3d at 1150. Since the ALJ

16  asserted that Dr. Porcelli's findings were "unclear" and "highly illegible," and, as explained herein,

17  the ALJ failed to properly consider information contained in Dr. Porcelli's treatment records, it

18  appears that clarification from Dr. Porcelli may impact the disability determination in this case.[11]

19  As such, remand is warranted to clarify and reconsider Dr. Porcelli's treatment notes and medical

20  opinions.

21  /

22  /

23  /

24

25  [11]  It appears that Dr. David Jarmon, the medical expert who testified at the hearing, also found

26  it difficult to read Dr. Porcelli's notes. Specifically, in response the ALJ's question if there was
sufficient information in the medical evidence to render an opinion about plaintiff's condition, Dr.

27  Jarmon expressed that there are "holes in the documentation," that there are few psychiatric
diagnoses in the medical evidence after 2001, and that although he looked at the more recent

28  treatment notes "pretty carefully," he "couldn't find a diagnosis." [AR at 683-84.]

**C.     THE ALJ'S CREDIBILITY DETERMINATION**

Plaintiff contends that the ALJ improperly considered his testimony and erred in finding him incredible.  [JS at 31–33.]  As the ALJ's credibility determination was based, in part, on his analysis of the medical evidence, which the Court finds was improper as to Dr. Porcelli, the ALJ must reassess plaintiff's credibility after he has reconsidered the medical evidence.

**D.     THE VOCATIONAL EXPERT'S TESTIMONY**

Plaintiff asserts that the ALJ erred in connection with the vocational expert's testimony, as the hypothetical question posed to the vocational expert improperly excluded some of plaintiff's limitations.  [JS at 24-25.]  "The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out *all* the limitations and restrictions of the particular claimant.'  Thus, an RFC that fails to take into account a claimant's limitations is defective."  Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original) (citing Embrey, 849 F.2d at 422).  Here, the ALJ based his questions to the vocational expert on his consideration of the medical evidence.  As such, new vocational expert testimony may be necessary if, after reconsidering the medical evidence discussed above, the ALJ credits Dr. Porcelli's opinion concerning plaintiff's limitations that the ALJ previously excluded from his RFC determination.

In addition, as new vocational expert testimony may be warranted, the Court exercises its discretion not to address plaintiff's contention that the ALJ improperly concluded -- based in part on the vocational expert's testimony -- that plaintiff can perform his past job as a cleaner.  [See AR at 427; JS at  27-30.]

/

/

/

/

/

/

/

14

### VI.

### REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  In this case, remand is appropriate for the ALJ to: 1) reconsider the medical evidence; 2) reconsider plaintiff's credibility; and 3) if warranted, obtain new testimony from a vocational expert. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: February 1, 2010

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE